UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

KENNETH ARNEAULD and LEZLIE ARNEAULD,

             Plaintiffs,

   -against-

PENTAIR, INC. and INTERNATIONAL TOOLS CORP.,

            Defendants.
_____X

CV-11-3891 (SJF)(ETB)

**OPINION & ORDER**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  NOV 2 6 2012  ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On June 27, 2011, plaintiffs Kenneth Arneauld and Lezlie Arneauld (collectively,

"plaintiffs") commenced this products liability action against defendants Pentair, Inc. ("Pentair")

and International Tool Corp. ("International Tool"), i/s/h International Tools Corp.,[1] in the

Supreme Court of the State of New York, County of Nassau. On August 12, 2011, Pentair

removed the action to this Court on the basis of this Court's diversity jurisdiction under 28

U.S.C. § 1332(a). Pentair and International Tool (collectively, "defendants") now move for

summary judgment dismissing plaintiffs' complaint in its entirety pursuant to Rule 56 of the

Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are

granted.

---

[1] The action against a third defendant Delta Power Equipment Corp. ("Delta Power") was
voluntarily dismissed by stipulation and order dated September 19, 2011.

I.    Background

   A.    Factual Background[2]

Plaintiffs are citizens of the State of New York. (International Tool's Rule 56.1

Statement ["56.1 Stat."], ¶ 1). Plaintiffs allege, *inter alia*, that on June 27, 2008, Kenneth

Arneauld ("Arneauld") was injured during the course of his employment with All Island Mica

Designs, Inc. ("All Island"), d/b/a All Island Solid Surface Fabricators, when a Delta Unisaw

sold, manufactured, distributed, designed, assembled, created, tested, inspected, produced,

marketed, imported and/or delivered by defendants malfunctioned, failed and/or jammed.

(Compl., ¶¶ 8-12. 19). Plaintiffs further allege that the Delta Unisaw was defective insofar as it

"was without any guards, warnings or anti-kick back device." (Compl., ¶ 31). In plaintiffs'

response to International Tool's Request for Production of Documents, plaintiffs, *inter alia*,

denied being in possession of any documents pertaining to the subject Delta Unisaw. (Affidavit

of Alice Spitz in Support of International Tool's Motion for Summary Judgment ["Spitz Aff."],

Ex. H). In plaintiffs' response to International Tool's Interrogatories Set One, plaintiffs indicate,

*inter alia*: (1) that they are not in possession of information regarding the date on which the

subject Delta Unisaw was purchased, from whom it was purchased, whether it was new or used

when purchased or whether there were any warranties with regard thereto; (2) that the subject

Delta Unisaw was model number 36-920 and had serial number 122-04-10902002-WF2; (3) that

they did not know of any alterations, additions or modifications to the subject Delta Unisaw

subsequent to its leaving its place of manufacture; (4) that Arneauld was cutting a backslash

---

[2] The facts are taken from International Tool's Rule 56.1 Statement, where undisputed and supported by the record, and from the documents and exhibits submitted by the parties in support of, and in opposition to, defendants' motions.

while standing at the time of the accident; (5) that the design of the subject Delta Unisaw was defective because it failed (a) to include a guard and/or "saw stop" technology and (b) to design a brake, "kill" or "deadman" switch for moving parts, or any other safety device onto the machine; (6) that plaintiffs cannot specify the part or component of the subject Delta Unisaw that is defective; and (7) that plaintiffs were unaware of any express warranty given by Pentair. (Spitz Aff., Ex. I).

In his report, plaintiffs' expert witness, Leslie N. Wilder ("Wilder"), indicates, *inter alia*: (1) that Arneauld was injured while using a table saw to cross-cut a piece of wood stock when a kickback occurred, causing his right hand to come into contact with the spinning blade, lacerating his index finger and amputating his last three (3) fingers, which were subsequently reattached; (2) that the subject Delta Unisaw was "likely" a Delta Model 36-920, manufactured on or about March of 1999; (3) that the Delta Unisaw's controls included stop and start pushbuttons, the ability to adjust the elevation of the blade and the ability to tilt the blade to varying degrees; (4) that an adjustable fence was mounted to the machine and table and a miter gauge was available and stored on the right side of the worktable; (5) that a Delta blade guard assembly that incorporated a splitter, anti-kickback pawls and a clear plastic blade cover or hood was mounted to the saw; (6) that Arneauld had been using the fence as a length guide and was "free-handedly" pushing the strip of wood across the blade when the kickback occurred; (7) that three (3) protective devices are typically used on table saws, i.e., the blade guard, the splitter or spreader and the anti-kickback device, and that those devices were combined into a single guarding assembly attached to the subject Delta Unisaw when Wilder inspected it, although Arneauld had told him that the guarding assembly had not been attached at any time prior to, or

at the time of, his accident and photographs taken by Arneauld's daughter one (1) week after the accident depict the saw without the guarding assembly and the table upon which it was mounted without the cutout necessary for its mounting with the guarding assembly; (8) that the blade of the subject Delta Unisaw should have been guarded and that had the guard been in place, it likely would have prevented Arneauld's injury; (9) that complying with the warning on the subject Delta Unisaw to "Always use the blade guard and splitter for every operation for which it can be used, including all thru-sawing" is neither simple nor convenient because the splitter must be removed for non-through cuts and removal and reinstallation of the guard requires the use of wrenches and, therefore, the manufacturer should have implemented a guard at least as effective as the splitter, but which would not tend to be removed and not replaced; (10) that the subject Delta Unisaw should have been designed for use with a riving knife guard instead of a splitter; (11) that the lack of a guard less likely to be removed and not replaced makes the design of the subject Delta Unisaw defective and unreasonably dangerous; (12) that the warning label on the subject Delta Unisaw was not easily seen or read from a user's normal position because it was mounted to the front of the cabinet housing which was recessed under the tabletop approximately thirteen inches (13") above the floor, and the thirteen (13) warnings fit into an area that is only approximately ten to eleven percent (10-11%) of the label's total area; and (13) that the safety of the subject Delta Unisaw could also have been improved by incorporating a sound and/or light warning and a disabling interlock meant to prevent the machine from operating without the guards in place. (Spitz Aff., Ex. K).

International Tool is a Florida corporation with its principal place of business in Florida, (56.1 Stat., ¶ 2; Affidavit of Barry Barnett ["Barnett Aff."], ¶ 4), and is a seller/distributor of

industrial power tools in the United States via direct sales and internet sales for various manufacturers. (56.1 Stat., ¶ 7; Barnett Aff., ¶ 5). According to Barry Barnett ("Barnett"), the vice president of International Tool: (1) International Tool does not design or manufacture any of the power tools that it sells, nor does it service the products of the power tool manufacturers that it sells, including the subject Delta Unisaw, (Barnett Aff., ¶ 6); (2) International Tool only sells products that are new, it does not sell used equipment or tools, (id.); and (3) his review of International Tool's past sales records "did not turn up any records involving any sales at any time prior to the date of [Arneauld's] incident to All Island * * * or directly to [the principals of All Island] for the subject saw under either model number [provided to him]," (Barnett Aff., ¶ 9). In its disclosure pursuant to Rule 26 of the Federal Rules of Civil Procedure ("Rule 26 disclosure"), International Tool: (1) denied (a) being in possession of any documents relating to this action or the subject Delta Unisaw or (b) selling the subject Delta Unisaw; and (2) provided photographs of the Delta Unisaw indicating, *inter alia*, (a) that it was manufactured by Delta International Machinery Corp., (b) that it was model number 34-806 and had serial number 97 L 93804, (c) that it was a ten inch (10") right tilting arbor saw, and (d) that there were thirteen (13) warnings affixed thereto, including (i) "Always use blade guard and splitter for every operation, for which it can be used, including all thru-sawing," (ii) "Keep hands out of path of saw blade," (iii) "Do not perform any operation free hand. Use fence when ripping and miter gage when cross-cutting," and (iv) "Know how to avoid risk of kickback." (Spitz Aff., Ex. F).

Pentair is a Minnesota corporation with its principal place of business in Minnesota. (56.1 Stat., ¶ 3; Affidavit of Allan Crider ["Crider Aff."], ¶ 3). According to Allan Crider ("Crider"), associate general counsel-litigation for Pentair, (Crider Aff., ¶ 2), Pentair is a holding

5

company that directly and indirectly holds the stock of several other companies; does not manufacture or distribute products in the State of New York; performs no services in the State of New York; does not design, manufacture or sell Delta Unisaws; and did not design, manufacture or sell the subject Delta Unisaw. (Crider Aff., ¶¶ 4-6).

On June 4, 2012, Pentair conducted an inspection of the subject Delta Unisaw at All Island, as a result of which it was determined that the product was a Delta Unisaw Model 34-806 manufactured in December 1997, not a Delta Unisaw Model 36-920 manufactured in March 1999, as assumed by plaintiffs' expert. (Affidavit of Robert A. Faller in Support of Pentair's Motion for Summary Judgment ["Faller Aff."], Ex. D). According to Pentair, the subject Delta Unisaw was manufactured by Delta International Machinery Corp. ("DIMC"), a valid, ongoing corporate entity which is a subsidiary of Black & Decker Inc., which is a subsidiary of The Black & Decker Corporation, which is a subsidiary of Stanley Black & Decker, Inc. (Faller Aff., Ex. D).

Andrew Spinaris ("Spinaris") is the vice president of All Island and Steven Lidonnici ("Lidonnici") is the president of All Island. (Spitz Aff., Ex. E at 8). Spinaris testified that in 2008, Arneauld was employed by All Island as a cutter, i.e., he manufactured the countertops and mill work products All Island needed to be cut and manufactured. (Spitz Aff., Ex. E at 9-10, 12).

According to Spinaris, Arneauld used a Delta Unisaw table saw to perform his duties. (Spitz Aff., Ex. E at 16). Spinaris testified that All Island had two (2) Delta Unisaws, but he did not know when he or Lidonnici bought them and had no records of their purchase or maintenance. (Spitz Aff., Ex. E at 17-19, 32-33). Spinaris could not recall ever doing business with International Tool or Pentair and testified that he did not know of any Florida corporations

6

with which he did business. (Spitz Aff., Ex. E at 74-76). Spinaris did not know if the Delta Unisaws had been purchased secondhand or used, (Spitz Aff., Ex. E at 18), or if he received any manual or safety instructions when the saws were purchased, (Spitz Aff., Ex. E at 33-34). Spinaris testified that All Island still had both Delta Unisaws. (Spitz Aff., Ex. E at 51-52).

B.    Procedural History

On June 27, 2011, plaintiffs commenced this products liability action against defendants and Delta Power Equipment in the Supreme Court of the State of New York, County of Nassau, which Pentair removed to this Court on the basis of this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). In their complaint, plaintiffs assert four (4) causes of action seeking damages: (1) for negligence in the design, creation, manufacture, assembly, testing, inspection, production, sales, distribution and selling of the subject Delta Unisaw (first cause of action); (2) strict products liability (second cause of action); (3) breach of warranty (third cause of action); and (4) loss of consortium (fourth cause of action).

Prior to an initial conference held before me on October 27, 2011, plaintiffs served their Rule 26 disclosure and Pentair served plaintiffs with interrogatories and document requests. At the initial conference on October 27, 2011, *inter alia*: (1) counsel for Pentair advised the Court that plaintiffs had failed to serve responses to its interrogatories and document requests; (2) outstanding discovery was referred to the Honorable E. Thomas Boyle, United States Magistrate Judge; and (3) a final pretrial conference was scheduled to be held before me on July 24, 2012. (Doc. No. 13).

Pursuant to the scheduling order of Magistrate Judge Boyle, dated November 2, 2011, all

discovery in this action was to be completed by June 30, 2012. (Doc. No. 14). On November 9, 2011, Pentair moved before Magistrate Judge Boyle to compel plaintiffs' responses to its interrogatories and document requests, indicating, *inter alia*, that counsel for Pentair had demanded responses thereto on October 28, 2011 and November 8, 2011. (Doc. No. 15). On November 16, 2011, counsel for plaintiffs filed opposition to Pentair's motion indicating, *inter alia*, that they intended to serve responses to Pentair's interrogatories and document requests by November 18, 2011. (Doc. No. 17). As a result, Magistrate Judge Boyle "suspended" Pentair's discovery motion.

On January 10, 2012, Pentair moved before Magistrate Judge Boyle for a pre-motion conference to address the deficiencies in plaintiffs' responses to its interrogatories and document requests and request leave to file a motion seeking sanctions against plaintiffs pursuant to Rule 37 of the Federal Rules of Civil Procedure. (Doc. No. 18). Pentair also advised that it had served a subpoena and notice to produce upon All Island on December 9, 2011 and that All Island had failed to comply therewith. On February 2, 2012, Magistrate Judge Boyle set a scheduling order for Pentair's motion for sanctions, pursuant to which Pentair was to serve its motion by February 15, 2012; plaintiffs were to serve their opposition by March 2, 2012; and Pentair was to serve its reply by March 9, 2012. (Doc. No. 19).

On March 1, 2012, plaintiffs requested an extension of time to oppose Pentair's motion for sanctions until March 23, 2012, (Doc. No. 20), which was opposed by Pentair, (Doc. No. 21). On March 20, 2012, Magistrate Judge Boyle granted plaintiffs application and extended their time to oppose Pentair's motion for sanctions until March 23, 2012. After plaintiffs filed their opposition on March 23, 2012, (Doc. No. 29), Pentair withdrew its motion for sanctions, (Doc.

8

No. 30).

On April 24, 2012, Pentair sought an extension of the discovery deadline from Magistrate Judge Boyle. (Doc. No. 32). On May 3, 2012, Pentair renewed its application for an extension of the discovery deadline before me. By order dated May 29, 2012, I granted Pentair's application to the extent of extending the discovery deadline until July 23, 2012, (Doc. No. 34), the day before the final pretrial conference that had been set during the initial conference.

On June 19, 2012, Pentair served its Rule 26 disclosure. (Faller Aff., Ex. D).

By letter dated June 27, 2012, less than one (1) month before the expiration of the extended discovery deadline, counsel for plaintiffs advised counsel for International Tool that they had not received International Tool's Rule 26 disclosure and requested that such disclosure be provided "as soon as possible." (Affidavit of James V. Durgana ["Durgana Aff."] in Opposition to International Tool's Motion for Summary Judgment, Ex. D). On June 28, 2012, Pentair requested a discovery conference before Magistrate Judge Boyle to address outstanding discovery issues, (Doc. No. 35), with which plaintiffs joined, (Doc. No. 36).

On June 29, 2012, plaintiffs served subpoenas to take the depositions of Lidonnici and Spinaris on July 13, 2012, which were adjourned until July 20, 2012. (See Doc. No. 36). According to plaintiffs, counsel for Pentair advised that they could not attend the depositions on July 20, 2012 and would not consent to conduct the depositions after the expiration of the discovery deadline. (See Doc. No. 36).

On July 6, 2012, plaintiffs served upon counsel for Pentair a Request for Production of Documents and Things and a notice to take the deposition of Crider. (See Doc. No. 36).

On July 10, 2012, International Tool served its Rule 26 disclosure. (Durgana Aff., Ex. C).

On July 13, 2012, plaintiffs served their expert disclosure. (See Doc. No. 36).

On July 18, 2012, Magistrate Judge Boyle denied Pentair's request for a discovery conference.

On July 20, 2012, only three (3) days prior to the extended discovery deadline, counsel for plaintiffs served a notice to take the deposition of Barnett on August 16, 2012, after expiration of the extended discovery deadline. (Durgana Aff., Ex. C).

Defendants now move for summary judgment dismissing plaintiffs' complaint in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. Discussion

### A. Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it might affect the outcome of the suit under governing law." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d

Cir. 2012) (quotations and citation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Windsor v. United States, — F.3d —, 2012 WL 4937310 (2d Cir. Oct. 18, 2012) (accord). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof); Powell v. National Board of Medical Examiners, 364 F.3d 79, 84 (2d Cir. 2004) (holding that summary judgment "is appropriate when, after discovery, the party * * * against whom summary judgment is sought, has not shown that evidence of an essential element of her case– one on which she has the burden of proof– exists.")

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citation omitted); see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor"), to determine whether there is a genuine issue for trial. See Ricci, 557 U.S. 557, 129 S.Ct. at 2677. "[A]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Gould v. Winstar Communications, Inc., 692 F.3d 148, 158 (2d Cir. 2012) (quotations and citation omitted); see

11

also Windsor, — F.3d —, 2012 WL 4937310 (accord). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 557 U.S. 557, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); see also Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) ("There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." (quotations and citation omitted)); Jeffreys, 426 F.3d at 553 ("The judge must ask not whether the evidence unmistakably favors ones [sic] side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." (quotations, alterations and citation omitted)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact," Zalaski v. City of Bridgeport Police Department, 613 F.3d 336, 340 (2d Cir. 2010); see also Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (accord), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011); see also F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991); see also PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) ("[T]he burden on the moving party may be discharged by 'showing'- that is pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." (quotations and

citation omitted)); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim.")

Once the moving party meets its burden, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Spinelli, 579 F.3d at 166 (internal quotations and citations omitted); see also Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); see also Lyons v. Lancer Ins. Co., 681 F.3d 50, 56-7 (2d Cir. 2012); Jeffreys, 426 F.3d at 554. The nonmoving party cannot avoid summary judgment simply by asserting "some 'metaphysical doubt as to the material facts[,]'" DeFabio v. East Hampton Union Free School District, 623 F.3d 71, 81 (2d Cir. 2010), cert. denied, 131 S. Ct. 1578, 179 L. Ed. 2d 475 (2011) (quoting Jeffreys, 426 F.3d at 554); "may not rely on conclusory allegations or unsubstantiated speculation," Jeffreys, 426 F.3d at 554 (quotations and citations omitted); see also DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012) ("A court cannot credit a plaintiff's merely speculative or conclusory assertions"); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." Miner v. Clinton County, New York, 541 F.3d 464, 471 (2d Cir. 2008); see also McCarthy, 482 F.3d at 202 (accord).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]

party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record * * *; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(e) provides, in relevant part, that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: * * * (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed– show that the movant is entitled to it; * * *." Fed. R. Civ. P. 56(e). "Rule 56(e) * * * requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file [as well as documents, electronically stored information, stipulations and other materials, see Fed. R. Civ. P. 56(c)(1)(A)],' designate 'specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548; see also Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) (accord). "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotations and citations omitted); see also Lyons, 681 F.3d at 57 (accord). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory * * * or based on speculation." Major League Baseball, 542 F.3d at 310; Katel Ltd. Liability Co. v. AT&T Corp., 607 F.3d 60, 67 (2d Cir. 2010) (accord); see also Brown, 654 F.3d at 358 (holding that the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment).

14

B.    Procedural Issues

    1.    Timeliness of International Tool's Motion

Plaintiffs contend that International Tool's motion should be denied because it failed to comply with Rule 4(G) of my individual rules, requiring all motions for summary judgment to be noticed no later than twenty (20) days after the close of discovery.

Since discovery was closed as of July 24, 2012, International Tool's service of its motion for summary judgment on October 8, 2012 did not comply with Rule 4(G) of my individual rules. Nonetheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co, Inc., 258 F.3d 62, 73 (2d Cir. 2001). Since, *inter alia*, Pentair's motion for summary judgment raising essentially the same issue was timely filed in accordance with my individual rules and International Tool's motion was filed more than one (1) month prior to the scheduled trial date and raises only one (1) issue, plaintiffs have not been prejudiced by International Tool's noncompliance with my individual rules. Plaintiffs' contention that they have been "irreparably financially and temporally prejudiced" by the delay since they already commenced preparing for trial when International Tool filed its motion is without merit since, *inter alia*, the pendency of any dispositive motion does not affect any trial scheduled before me. In other words, plaintiffs still had to prepare for trial whether or not there was a motion for summary judgment pending before me. Moreover, during the July 24, 2012 final pretrial conference, counsel for International Tool advised that they intended to file a motion for summary judgment on behalf of International Tool, so its belated motion should not have come as a surprise to plaintiffs.

Given the lack of prejudice, plaintiffs' own dilatory conduct in prosecuting this action

15

and my preference for resolving matters on the merits, I will exercise my discretion to overlook International Tool's noncompliance with Rule 4(G) of my individual rules under the circumstances of this case.[3]

### 2. Defendants' Purported Discovery Failures

Plaintiffs contend that Pentair and International Tool should be precluded from relying upon Crider's and Barnett's affidavits, respectively, based upon their purported refusal to produce those witnesses for a deposition and failure to serve responses to plaintiffs' discovery demands. In addition, plaintiffs contend that International Tool should be precluded from relying upon Spinaris's deposition testimony since it agreed to adjourn Spinaris's deposition to afford him an opportunity to review and produce any relevant documents.

"[P]reclusion of evidence is a harsh remedy * * * [that] should be imposed only in rare situations." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (quotations and citations omitted); see also Pall Corp. v. 3M Purification Inc., 279 F.R.D. 209, 213 (E.D.N.Y. 2011) (holding that preclusion is an "extreme sanction" that should not be granted lightly).

Defendants are not to blame for plaintiffs' failure to pursue this action diligently. Plaintiffs commenced this action on August 12, 2011 and, thus, had ample time, i.e., more than eleven (11) months, within which to conduct discovery. See, e.g. Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 927 (2d Cir. 1985). Counsel for the parties

---

[3] In light of this determination, International Tool's motion for an extension of time *nunc pro tunc* to file its motion for summary judgment (Doc. No. 62), filed on November 7, 2012, is denied as moot.

appeared for an initial conference before me on October 27, 2011, yet plaintiffs waited until June 27, 2012, eight (8) months thereafter, before seeking any discovery from either defendant in this action. With less than one (1) month before the expiration of the extended discovery deadline, plaintiffs first sought International Tool's belated Rule 26 disclosure; served subpoenas to take the non-party depositions of Lidonnici and Spinaris; and served document requests and notices to take depositions upon defendants.

### a. Crider's Deposition

Plaintiffs did not serve Pentair with a notice to take Crider's deposition or Request for Production of Documents until July 6, 2012, (Durgana Aff., Exs. A and D), less than three (3) weeks before the expiration of the extended discovery deadline. The notice of deposition scheduled Crider's deposition for July 19, 2012, four (4) days before the expiration of the extended discovery deadline, at plaintiffs' counsel's offices in New York. In an e-mail sent to counsel for plaintiffs on July 13, 2012, counsel for Pentair objected to plaintiffs' notice of deposition on the grounds, *inter alia*: (1) that Crider's deposition should be held in Minnesota, where Pentair has its principal place of business, not New York; (2) that Crider's deposition was unnecessary because the information sought from Crider, i.e., the organizational structure involving the relationships between and among Pentair and its present and former subsidiaries, was readily available on the internet, was more efficiently obtainable via interrogatories and was of questionable relevance; and (3) that Crider's deposition should not be conducted prior to the depositions of plaintiffs and their expert because it had noticed those depositions first.

Initially, Pentair's latter two (2) objections to plaintiffs' notice of deposition do not

provide a basis for Crider's failure to appear on the scheduled date. "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept," Trilegiant Corp. v. Sitel Corp., 275 F.R.D. 428, 431 (S.D.N.Y. 2011); see also Gucci America, Inc. v. Guess?, Inc., 790 F.Supp.2d 136, 140 (S.D.N.Y. 2011) ("Discoverability is determined by the broad standard of relevance, * * * [but] [t]he broad standard of relevance, * * * is not a license for unrestricted discovery."); Ragusa v. Malverne Union Free School District, 549 F. Supp. 2d 288, 293 (E.D.N.Y. 2008) ("Relevance under Rule 26 has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." (quotations and citation omitted)), and the deposition of Crider falls "well within this generous standard of relevance." See, e.g. Ferguson v. Lion Holding, Inc., Nos. 02 Civ. 4258, 02 Civ. 4261, 2005 WL 1216300, at * 2 (S.D.N.Y. May 23, 2005). Moreover, "[u]nder the federal rules, a discovery priority is not established based upon which party noticed a deposition first, but rather, Rule 26(d) authorizes the court to order the sequence of discovery upon motion." Occidental Chemical Corp. v. OHM Remediation Services, 168 F.R.D. 13, 14 (W.D.N.Y. 1996); see also Convermat Corp. v. St. Paul Fire & Marine Ins. Co., No. CV 06-1045, 2007 WL 2743679, at * 1 (E.D.N.Y. Sept. 18, 2007) ("[U]nder the Federal Rules there is no rule of discovery priority.")

However, although "the party noticing the deposition usually has the right to choose the location * * *[,] [w]here a corporation is involved as a party to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business." Buzzeo v. Board of Education, Hempstead, 178 F.R.D. 390, 392 (E.D.N.Y. 1998) (quotations and citations omitted); see also Estate of Gerasimenko v. Cape Wind Trading Co.,

272 F.R.D. 385, 390 (S.D.N.Y. 2011) ("The usual rule in federal litigation, is that in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located. * * * This rule applies with equal force to 30(b)(6) witnesses." (quotations, alterations and citations omitted)); Dwyer v. Deutsche Lufthansa, AG, No. CV-04-3184, 2007 WL 526606, at * 2 (E.D.N.Y. Feb. 13, 2007) ("[T]here is a presumption that depositions of corporate officers will take place at the corporate officer's residence or the corporation's principal place of business.")[4] Upon a corporate defendant's objection to a deposition scheduled at a location other than in its principal place of business, "the plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the Court to suspend the general [presumption] and to order that depositions be held in the other location." Ambac Assurance Corp. v. Adelanto Public Utility Authority, No. 09 Civ. 5087, 2012 WL 1589597, at * 6 (S.D.N.Y. May 7, 2012). The general presumption can be rebutted by a showing that "factors of cost, convenience, and litigation efficiency, militate in favor of an alternate location." Ambac Assurance, 2012 WL 1589597, at * 6 (quotations and citation omitted); see also Buzzeo, 178 F.R.D. at 392; Dwyer, 2007 WL 526606, at * 2.

As to cost, the choice is between having counsel for three (3) parties travel to Minnesota, or having one (1) witness travel to New York and, thus, this factor weighs slightly in favor of conducting Crider's deposition in New York. With respect to convenience, all counsel would be inconvenienced if they had to travel to Minnesota, but the inconvenience is part and parcel of the duties for which they were retained. On the other hand, Crider, who is not himself a named

---

[4] Although the general presumption "is not applicable in a suit in which plaintiff had little choice of forum," Ambac Assurance Corp. v. Adelanto Public Utility Authority, No. 09 Civ. 5087, 2012 WL 1589597, at * 6 (S.D.N.Y. May 7, 2012), this is not such a suit.

defendant, would be inconvenienced by having to travel to New York. Moreover, since plaintiffs chose the action's forum, it is they who should bear the reasonable burdens of litigation. Thus, the convenience factor weighs slightly in favor of conducting Crider's deposition in Minnesota. The third factor is neutral, since any discovery disputes arising during Crider's deposition can be resolved by the Court via a telephone conference and thus, the situs of the deposition has no affect on litigation efficiency. Since there are no special circumstances which compel suspension of the general presumption in favor of conducting a corporate defendant's deposition in its principal place of business, Pentair's first objection to plaintiffs' notice of deposition was appropriate.

Contrary to plaintiffs' contention, Pentair did not refuse to proceed with the deposition of Crider at all. Rather, counsel for Pentair indicated that "[i]f [Crider] is to be deposed at all * * *, it should be in Minnesota." (Pentair Reply, Ex. A). Plaintiffs took no further steps to pursue Crider's deposition upon Pentair's objection. Although plaintiffs indicate that they sought leave to file a motion to compel Crider's deposition from Magistrate Judge Boyle, the application they submit in support of that assertion is dated July 17, 2012, prior to the scheduled deposition date, and the application makes no reference at all to Pentair's objection to the location of Crider's deposition. (Durgana Aff., Ex. B). Indeed, in that application, plaintiffs' counsel indicated only that "it is unknown if Allen Crider will be produced on th[e] [scheduled] date." (Id.) Moreover, on July 18, 2012, Magistrate Judge Boyle denied plaintiffs' application without prejudice to renewing the application before me. Plaintiffs never renewed their application or otherwise moved to compel Crider's deposition at any time after the date set in their notice of deposition.

20

### b. Barnett's Deposition

Upon receipt of International Tool's Rule 26 disclosure on July 10, 2012, with less than two (2) weeks remaining within which to complete discovery, plaintiffs still waited ten (10) days, i.e., until July 20, 2012, before serving International Tool with their Request for Production of Documents and a notice to take the deposition of Barnett. With respect to the notice to take Barnett's deposition, plaintiffs served the notice only three (3) days prior to the extended discovery deadline. Since Rule 30(b)(1) of the Federal Rules of Civil Procedure requires "[a] party who wants to depose a person by oral questions [to] give reasonable written notice to every other party," service of the notice only three (3) days prior to the extended discovery deadline could not have provided International Tool with reasonable notice to take Barnett's deposition prior to the close of discovery. See, e.g. Eckert v. United Auto. Workers, No. 04-cv-0538S, 2010 WL 2160346, at * 2 (W.D.N.Y. May 27, 2010) (finding that a notice to take a deposition served only five (5) days prior to the date set for the deposition did not provide reasonable notice); U.S. v. Philip Morris Inc., 312 F. Supp. 2d 27, 36-7 (D.D.C. 2004) (finding that notice of three (3) business days does not constitute reasonable notice). Accordingly, plaintiffs scheduled the deposition of Barnett for August 16, 2012, more than three (3) weeks after the close of discovery in this case. Since discovery was closed prior to the date noticed for Barnett's deposition, Barnett was never served with a proper notice to take his deposition and, thus, was under no obligation to appear for the deposition. See Fed. R. Civ. P. 37(d)(1)(A) ("The court * * * may, on motion, order sanctions if: (i) a party * * * fails, *after being served with proper notice*, to appear for that person's deposition * * *." (emphasis added)); e.g. Pegoraro v. Marrero, 281 F.R.D. 122, 128 (S.D.N.Y. 2012) ("Absent evidence that the witnesses * * * were given

reasonable written notices * * * as required by Rule 30(b)(1), * * *, the Court has no authority to compel witnesses, including the parties, to attend any depositions which were [not] noticed * * *.")

To the extent plaintiffs contend that they could not have scheduled Barnett's deposition until after they received International Tool's Rule 26 disclosure identifying him as a witness, they provide no explanation for why they did not seek a deposition of International Tool under Rule 30(b)(6) of the Federal Rules of Civil Procedure, which allows a party to name a corporation as the deponent and "describe with reasonable particularity the matters for examination" in its notice for deposition, as a result of which the corporation would then be required to produce the appropriate person. Plaintiffs could have served such a notice of deposition under Rule 30(b)(6) at any time during the approximate eleven (11) months that this action was pending prior to the close of discovery because Rule 26(d)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that "methods of discovery may be used in any sequence." See, e.g. Century Jets Aviation LLC v. Alchemist Jet Air LLC, Nos. 08 Civ. 9892, 09 Civ. 7659, 2011 WL 724734, at * 2 (S.D.N.Y. Feb. 8, 2011) ("It is unclear why [the defendant] believed it needed to wait until the completion of document discovery to depose witnesses. Fed. R. Civ. P. 26(d)(2) provides that, unless the court orders otherwise, 'methods of discovery may be used in any sequence.' * * * While in a majority of cases, interrogatory and document discovery are completed prior to depositions, this is certainly not a hard and fast rule." (quotations, alterations and citations omitted)); Convermat Corp., 2007 WL 2743679, at * 2 (accord). Thus, plaintiffs have failed to identify any act of International Tool that prevented them from deposing Barnett prior to the expiration of the extended discovery deadline.

22

c.    Defendants' Other Purported Discovery Failures

Rule 34(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that a party to whom a document request is directed "must respond in writing within 30 days after being served." Although Rule 34(b)(2) further provides that "[a] shorter or longer time may be stipulated to under Rule 29 or be ordered by the court[,]" plaintiffs have not demonstrated that the parties ever stipulated to, or that the court ever ordered that defendants respond to their Requests for Production of Documents, served less then thirty (30) days prior to the expiration of the extended discovery deadline, either: (a) prior to the expiration of the extended discovery deadline, i.e., within a shorter time period than provided by Rule 34(b)(2), or (b) after the close of discovery.[5] Although plaintiffs indicate that they served a good faith letter upon Pentair on July 20, 2012, only fourteen (14) days after the document request had been served upon it, Pentair still had more than two (2) weeks within which to respond to the request under Rule 34(b)(2) at the time the purported good faith letter was served.

Plaintiffs' contention that they could not have served their Request for Production of Documents upon Pentair until after they had received its Rule 26 disclosure is disingenuous since plaintiffs received Pentair's Rule 26 disclosure on June 19, 2012, more than thirty (30) days prior to the expiration of the extended discovery deadline, yet waited seventeen (17) days before serving Pentair with their Request for Production of Documents. (See Durgana Aff., Ex. B).

Moreover, prior to the expiration of the extended discovery deadline, plaintiffs never moved: (a) pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Civil Rule

---

[5] In any event, in its Rule 26 disclosure, International Tool indicates, *inter alia*, that it "is not in possession of any documents relating to the subject action or alleged subject device/saw and denies selling this subject saw." (Spitz Aff., Ex. F).

37.3 to compel Crider's or Barnett's depositions or defendants' responses to their Requests for

Production of Documents,[6] or (b) pursuant to Rule 37(d) of the Federal Rules of Civil Procedure

for sanctions, including the sanction of preclusion, based upon Crider's and Barnett's purported

failure to appear for a deposition or defendants' failure to respond to their Requests for

Production of Documents. In fact, plaintiffs have not identified any court order requiring

Crider's or Barnett's depositions or defendants' compliance with discovery requests due after

expiration of the extended discovery deadline. "Although the order compelling discovery need

not issue pursuant to Rule 37(a), there must be a valid court order in force before sanctions may

be imposed pursuant to Rule 37(b)(2)." Daval Steel Products, a Division of Francosteel Corp. v.

M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991); see also Lopez v. Catholic Charities of

Archdiocese of New York, No. 00 CV 1247, 2000 WL 1725029, at * 2 (S.D.N.Y. Nov. 20, 2000)

(accord). Accordingly, defendants are not precluded from supporting their motions for summary

judgment with Crider's and Barnett's affidavits.

In addition, International Tool is not precluded from supporting its motion for summary

judgment with Spinaris's deposition testimony. On April 23, 2012, Spinaris was deposed

pursuant to a subpoena served upon him by counsel for Pentair. (See Spitz Aff., Ex. E). When

---

[6] Although plaintiffs indicate that they "requested leave to file a motion to compel the responses [to their Request for Production of Documents] from [International Tool]," [Durgana Aff., ¶ 42), and cite to Exhibit B of the Durgana Affidavit in support of that contention, Exhibit B is International Tool's Rule 26 Disclosure, not a motion to compel. In fact, none of the exhibits submitted by plaintiffs support their assertion that they ever sought leave to file a motion to compel International Tool to respond to their Request for Production of Documents. Significantly, plaintiffs application to Magistrate Judge Boyle dated July 17, 2012 indicates, in relevant part, that "[a]ttorneys for plaintiffs are in the process of serving Defendant International Tools [sic] with a Request for Production of Documents and Things * * *." (Durgana Aff., Ex. E).

24

Spinaris was unable to testify about certain matters, e.g., All Island's purchase of the subject Delta Unisaw, counsel for Pentair indicated, *inter alia*, that he was willing to adjourn the deposition for a couple of weeks to afford Spinaris an opportunity to comply with the subpoena, i.e., to review and produce all relevant documents. (Spitz Aff., Ex. E at 67-73). Although counsel for Pentair arranged for Spinaris's deposition to continue on May 8, 2012, (Spitz Aff., Ex. E at 73-4), counsel for International Tool nonetheless asked Spinaris some questions prior to the deposition being adjourned. (Spitz Aff., Ex. E at 74-75, 77). Plaintiffs' counsel, on the other hand, merely reserved his right to ask questions of Spinaris at the continued deposition. (Spitz Aff., Ex. E at 75-6).

For reasons unexplained by any party, the continued deposition of Spinaris pursuant to Pentair's subpoena did not take place, either on May 8, 2012 or at any other time prior to the close of discovery. On June 29, 2012, more than two (2) months after Spinaris's initial deposition, and less than one (1) month before the expiration of the extended discovery deadline, counsel for plaintiffs served their own subpoena to take the depositions of Spinaris and Lidonnici on July 13, 2012. (See Durgana Aff., Ex. E). In their application to Magistrate Judge Boyle dated July 17, 2012, (id.), plaintiffs' counsel indicated, in relevant part, that the depositions of Spinaris and Lidonnici had been rescheduled for July 20, 2012, only three (3) days prior to the extended discovery deadline, "because of availability," although they conspicuously fail to indicate to whose availability they were referring. In addition, plaintiffs' counsel indicated, *inter alia*, that they anticipated having to proceed with the depositions in the absence of Pentair's counsel. There is otherwise no indication in the record, *inter alia*, as to why Spinaris and Lidonnici were not deposed prior to the extended discovery deadline, nor why plaintiffs' counsel

25

did not seek relief from this Court when the depositions were not conducted as scheduled on July 20, 2012. Moreover, the record is devoid of any indication that International Tool was in any way responsible for the failure to depose Spinaris and Lidonnici prior to the close of discovery. Accordingly, International Tool is not precluded from using Spinaris's deposition testimony in support of its motion for summary judgment.

### 3. Sufficiency of Affidavits

Plaintiffs contend that Crider's affidavit should be stricken as insufficient because, *inter alia*: (1) it fails to establish that Crider has personal knowledge of Pentair's manufacturing and operations; and (2) fails to recite all material information, i.e., the functional relationship between Pentair and a subsidiary and the nature of a holding company. Plaintiffs contend that Barnett's affidavit should be stricken as insufficient because, *inter alia*: (1) it fails to indicate that Barnett has personal knowledge regarding the types of machines that International Tool manufactured in 1997 and 1999; (2) it fails to recite material information, i.e., the functional relationship between defendants and whether International Tool distributed the Delta Unisaw at issue; and (3) it is a "self-serving statement comprised of legal conclusions devoid of any factual basis," (Durgana Aff., ¶ 57).

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." See Patterson v. County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) (quoting former Rule 56(e) of the Federal Rules of

Civil Procedure). "A witness's conclusions based on personal observations over time may constitute personal knowledge," New York ex rel. Spitzer v. Saint Francis Hospital, 94 F.Supp.2d 423, 425 (S.D.N.Y. 2000), and a witness "may testify as to the contents of records she reviewed in her official capacity." Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000); see also Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005). "[T]he test of admissibility * * * is whether a reasonable trier of fact could believe the witness had personal knowledge of the facts to which he is testifying." New York ex rel. Spitzer, 94 F. Supp. 2d at 427; see also Zakre, 396 F. Supp. 2d at 504.

"Hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in the Rule 56(e) affidavit." Major League Baseball, 542 F.3d at 310 (quotations, alterations and citations omitted); see also Patterson, 375 F.3d at 219 ("Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit * * * means that an affiant's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient * * * .")

In his affidavit, Barnett states, in relevant part, that he has been "the Vice-President of [International Tool] * * * since 1990," (Barnett Aff., ¶ 2), and that he is "competent to be a witness as to the facts and matters stated in th[e] Affidavit," (Barnett Aff., ¶ 1). Accordingly, with the exception of paragraphs seven (7) and ten (10)[7], which contain inadmissible hearsay to

---

[7] In paragraph seven (7), Barnett states that "[his] attorneys have advised [him] that the plaintiff claims that he injured himself when using a Delta Unisaw while he was an employee of an entity known [as], All Island Mica Designs, Inc. d/b/a All Island Solid Surface. [He] was also informed that All Island Mica Designs, Inc. d/b/a All Island Solid Surface is owned by a Mr. Andrew Spinaris and Mr. Steven Lidonnichi." (Barnett Aff., ¶ 7). In paragraph ten (10), Barnett states that "[he] ha[s] also been informed that the plaintiffs have failed to exchange any evidence that shows that International Tool has ever had anything to do with the design, manufacturing or

the extent offered for the truth of the matters asserted therein, Barnett's affidavit satisfies the

requirements of Rule 56(c)(4). See, e.g. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133,

138-39 (2d Cir. 2009) (finding that a witness's affidavit stating that he was a former vice

president of the defendants' business and was "fully familiar with the facts and circumstances set

forth" therein satisfied the requirements of former Rule 56(e)); Bank of America, Nat. Ass'n v.

Kamico, Inc., No. 11 Civ. 5255, 2012 WL 1449185, at * 56 (S.D.N.Y. Apr. 24, 2012) (holding

that there was no question as to the competence of a declaration by the vice president of the

plaintiff-company because as a vice president, the witness was both qualified, and duty-bound, to

review the relevant business records of the plaintiff before making his affidavit); Merrill Lynch

Business Financial Services Inc. v. Heritage Packaging Corp., No. CV-06-3951, 2007 WL

2815741, at * 4 (E.D.N.Y. Sept. 25, 2007) (finding that the defendant's unsupported allegation

that the declaration was not based upon the witness's personal knowledge was insufficient in

light of the witness's statement that she was making the declaration on personal knowledge and

that the witness may offer evidence in her declaration based upon personal knowledge obtained

from her review of the records of the company for which she was a vice president). "An affiant

is under no obligation to specify the source of his personal knowledge." Bank of America, 2012

---

sale and/or resale of the subject saw." (Barnett Aff., ¶ 10). To the extent those assertions are
offered for the truth of the matters stated, they constitute inadmissible hearsay and, thus, have not
been considered on this motion. To the contrary, although paragraph eight (8) of the affidavit
indicates that Barnett was initially informed that the subject Delta Unisaw was a model 36-920,
but then was informed that the model number was actually 34-806, (Barnett Aff., ¶ 8), those
assertions are not offered for the truth of the matters stated therein, i.e., the correct model number
of the Delta Unisaw. Indeed, Barnett states that during his personal review of International
Tool's past sales records, he searched for sales of the subject saw under either model number.
(Barnett Aff., ¶ 9). Accordingly, paragraph eight (8) does not constitute hearsay and is properly
considered on this motion.

WL 1449185, at * 6.

Likewise, since Crider states that he is an associate general counsel-litigation for Pentair;
that he is "familiar with the corporate organizational structure involving the relationships
between and among Pentair, Inc., its present and former direct and indirect subsidiaries," (Crider
Aff., ¶ 2); and that he is "competent to be a witness as to the facts and matters stated in [the]
Affidavit," (Crider Aff., ¶ 1), his affidavit satisfies Rule 56(c)(4).  See, e.g. SCR Joint Venture,
559 F.3d at 138-39; Major League Baseball, 542 F.3d at 312-13 (finding the declaration of a
senior vice president and general counsel to be sufficient); Stevens v. Water District One of
Johnson County, 561 F. Supp. 2d 1224, 1233 (D. Kan. 2008) (holding that personal knowledge
can be inferred based upon the witness's position as general counsel for the company); Adams v.
Unum Life Ins. Co. of America, 508 F. Supp. 2d 1302, 1311 n. 5 (N.D. Ga. 2007) (rejecting the
plaintiff's objections to an affidavit of the defendant's vice president, corporate secretary and
assistant general counsel who averred that his testimony was based upon personal knowledge);
Danone Asia Pte. v. Happy Dragon Wholesale, Inc., No. CV-05-1611, 2006 WL 845573, at * 4
n. 3 (E.D.N.Y. Mar. 29, 2006) (finding that the statements of a witness who was general counsel
of a parent company, as opposed to a litigating attorney in the action, were admissible because he
was an officer of the company and made statements based upon his personal knowledge and
review of the company's records); Waddell & Reed Financial, Inc. v. Torchmark Corp., 223
F.R.D. 566, 588 n. 32 (D. Kan. 2004) (finding that an officer and general counsel of related
companies had personal knowledge of statements indicating that the companies were separate
legal entities with separate assets, boards of directors and officers; made separate and different
regulatory filings; were governed by different regulatory bodies; and maintained separate minute

books).

Moreover, the purported "self-serving" nature of Barnett's statements in his affidavit goes to its weight, not its admissibility. See In re Dana Corp., 574 F.3d 129, 153 (2d Cir. 2009); St. Pierre v. Dyer, 208 F.3d 394, 405 (2d Cir. 2000). Similarly, "[t]he lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect[s] the weight and credibility of the testimony * * *." Zakre, 396 F. Supp. 2d at 504; see also Serrano v. Cablevision Systems Corp., 863 F. Supp. 2d 157, 163 (E.D.N.Y. 2012); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 681 (S.D.N.Y. 2011). Plaintiffs' attempt to show that Barnett's affidavit omits material information because he does not expressly deny that International Tool did not distribute the subject Delta Unisaw for resale is disingenuous. Barnett avers, inter alia, that International Tool "is a seller/distributor of industrial power tools in the United States via direct sales and internet sales" and that his personal review of International Tool's past sales records failed to disclose any records involving any sales for the subject Delta Unisaw to All Island or its principals prior to the date of the accident. Those statements, coupled with Spinaris's failure to recall any information regarding All Island's purchase of the subject Delta Unisaw, and plaintiffs' failure to produce any evidence regarding the purchase and/or sale of the subject Delta Unisaw, are sufficient to demonstrate International Tool's entitlement to judgment as a matter of law. Without more information from plaintiffs or All Island, e.g., regarding the date the subject Delta Unisaw was purchased, International Tool cannot be expected to identify every entity to whom it sold a Delta Unisaw, under either the model number identified by plaintiffs or the model number identified by Pentair, from its incorporation in 1983 until the date of the accident based upon plaintiffs' speculation that it might have sold the subject

Delta Unisaw to a third party, which then resold it to All Island.[8]

### 4. The Subject Delta Unisaw

Plaintiffs contend that there is a triable issue of fact with respect to the model number of the subject Delta Unisaw, since their expert indicated it was Model 36-920, whereas Crider says only that Pentair "did not design, manufacture or sell the subject Delta Unisaw Model 34-806." (Crider Aff., ¶ 6).

In its Rule 26 disclosure, Pentair indicated, in relevant part, that "[b]ased upon the product inspection conducted on behalf of [Pentair] on June 4, 2012, at All Island Mica Designs, Inc., the product that is the subject of this litigation is a Delta Unisaw Model 34-806 manufactured in December, 1997." (Faller Aff., Ex. D). In his report, Wilder indicated, in relevant part, that although he "personally examined the subject machine at All Island Mica Designs on March 31, 2011, * * * *it was not possible to determine the machine's model or serial number*, nor was such information available from All Island Mica Designs," due to the purported inaccessibility of the machine's nameplate. (Durgano Aff., Ex. C). Thus, Wilder's conclusion that the model number of the subject Delta Unisaw was "likely" a Delta Model 36-920, manufactured on or about March of 1999, was not based upon his personal observation. Rather, Wilder's opinion was based upon his "detailed comparison of the actual subject machine with numerous published Delta machine drawings, parts lists and parts information," although he identifies only a few websites in his report. (Id.)

---

[8] In any event, in its Rule 26 disclosure, International Tool specifically denies "selling this subject saw." (Spitz Aff., Ex. F).

Rule 702 of the Federal Rules of Evidence provides, in relevant part, that an expert witness "may testify in the form of an opinion or otherwise if: * * * (b) the testimony is based on sufficient facts or data * * *." Rule 703 of the Federal Rules of Evidence provides, in relevant part, that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

Pursuant to Rule 702, and the court's function as a "gatekeeper" with respect to the admission of expert testimony, see Major League Baseball, 542 F.3d at 311; Quintanilla v. Komori America Corp., No. CV 04-5227, 2007 WL 1309539, at * 6 (E.D.N.Y. May 4, 2007), aff'd, No. 07-2375-CV, 2009 WL 320186 (2d Cir. Feb. 10, 2009), the court "must inquire into whether the scientific, technical or other specialized testimony provided by [a qualified] expert is both relevant and reliable." Quintanilla, 2007 WL 1309539, at * 3. "Though the weight given to expert testimony should be left to the finder of fact, expert testimony should be excluded altogether if it is speculative or conjectural or if it is based on assumptions so unrealistic and contradictory as to suggest bad faith." Quintanilla, 2007 WL 1309539, at * 3 (quotations and citations omitted); see also Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213-14 (2d Cir. 2009); Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) ("Although expert testimony should be excluded if it is speculative or conjectural * * *, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison * * *, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." (quotations, alterations and citations omitted)). "Moreover, courts are not required to admit expert opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is

simply too great an analytical gap between the data and the opinion proffered." Quintanilla, 2007 WL 1309539, at * 3 (quotations, alterations and citation omitted); see General Electric Co. v. Joiner, 522 U.S. 136, 142, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); also Ruggiero v. Warner-Lambert, 424 F.3d 249, 255 (2d Cir. 2005) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, * * * the exclusion of that unreliable opinion testimony [is required]."); Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir. 2005) (accord). In its function as "gatekeeper," "the trial court must exclude testimony that rests unreliably on a foundation of sand." Quintanilla, 2007 WL 1309539, at * 6 (quotations, alterations and citation omitted). Moreover, "[a]n expert's opinions that are without factual basis and are based on speculation and conjecture are * * * inappropriate material for consideration on a motion for summary judgment." Major League Baseball, 542 F.3d at 311.

Wilder's opinion that the subject Delta Unisaw was "likely" a Delta Model 36-920 manufactured in 1999 is not based upon his personal observation of the product and is purely conjectural. To the contrary, in its Rule 26 disclosure, Pentair definitively states that based upon its inspection of the product, the model number of the subject Delta Unisaw is 34-806, manufactured in 1997, and that assertion is corroborated by photographs exchanged by both Pentair and International Tool. Wilder's conjectural opinion to the contrary thus fails to raise a triable issue of fact.

In any event, regardless of the model number, Crider unequivocally states that Pentair "does not design, manufacture or sell Delta Unisaws." (Crider Aff., ¶ 6). Accordingly, the identity of the actual model number of the subject Delta Unisaw would not affect the outcome of

this litigation and, thus, there is no genuine issue of material fact requiring a trial in this matter. See, e.g. Powell, 364 F.3d at 84 ("An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.")

C.    Defective Product Claims

Under New York law, which the parties do not dispute is applicable to this case, "a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer [or supplier] on the basis of any one or more of four theories of liability[:] * * * express or implied [warranty], on the ground of negligence, or * * * on the theory of strict products liability." Voss v. Black & Decker Manufacturing Co., 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 450 N.E.2d 204 (N.Y. 1983); see also Weissman v. Dow Corning Corp., 892 F. Supp. 510, 516 (S.D.N.Y. 1995). Although "[s]trict products liability for design defect * * * differs from a cause of action for a negligently designed product in that the plaintiff is not required to prove that the manufacturer acted unreasonably in designing the product," Voss, 59 N.Y.2d at 106, 463 N.Y.S.2d 398; see also Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 165 (S.D.N.Y. 2003); Gonzalez by Gonzalez v. Morflo Industries, Inc., 931 F. Supp. 159, 165 (E.D.N.Y. 1996), New York courts have nonetheless considered the claims to be "almost functionally equivalent," Kern v. Roemer Machine & Welding Co., 820 F. Supp. 719, 721 (S.D.N.Y. 1992), aff'd, 996 F.2d 302 (2d Cir. 1993); DeRosa v. Remington Arms Co., Inc., 509 F. Supp. 762, 766 (E.D.N.Y. 1981), finding "almost no difference between a *prima facie* case in negligence and one in strict liability." Fisher v. Multiquip, Inc., 96 A.D.3d 1190, 1192, 949 N.Y.S.2d 214 (3d Dept. 2012); see also Rogers v.

34

Westfalia Associated Technologies, Inc., 485 F. Supp. 2d 121, 126 (N.D.N.Y. 2007); Arnold v. Krause, Inc., 233 F.R.D. 126, 132 (W.D.N.Y. 2005); Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001). Similarly, where liability is predicated upon a failure to warn theory, negligence and strict products liability claims are equivalent. Fane v. Zimmer, Inc., 927 F.2d 124, 130 (2d Cir. 1991); Martin v. Hacker, 83 N.Y.2d 1, 8 n. 1, 607 N.Y.S.2d 598, 628 N.E.2d 1308 (N.Y. 1993).

With respect to claims based upon strict products liability and negligence theories, "a plaintiff may assert that the product is defective because of a mistake in the manufacturing process * * *[,] because of an improper design * * * or because the manufacturer failed to provide adequate warnings regarding the use of the product." Voss, 59 N.Y.2d at 106, 463 N.Y.S.2d 398; see also Fane, 927 F.2d at 128; Amatulli by Amatulli v. Delhi Construction Corp., 77 N.Y.2d 525, 532, 569 N.Y.S.2d 337, 571 N.E.2d 645 (1991). With respect to breach of implied warranty claims governed by Sections 2-314 and 2-315 of the New York Uniform Commercial Code–Sales, a product is defective if it is not "fit for the ordinary purposes for which such goods are used[.]" N.Y. U.C.C. § 2-314(2)(c); see also Denny v. Ford Motor Co., 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 662 N.E.2d 730 (N.Y. 1995); Gonzalez by Gonzalez, 931 F. Supp. at 165.

"[T]he manufacturer of a defective product is [strictly] liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages." Doomes v. Best Transit Corp., 17 N.Y.3d 594, 607-08, 935 N.Y.S.2d 268, 958 N.E.2d 1183 (N.Y. 2011) (quotations and citation omitted); see also Jaramillo v. Weyerhaeuser Co. ("Jaramillo I"), 12 N.Y.3d 181, 188, 878 N.Y.S.2d 659, 906 N.E.2d 387 (N.Y. 2009). In addition, strict liability is

imposed upon sellers who engage in regular sales of the product in the ordinary course of their business. See Jaramillo I, 12 N.Y.3d at 193, 878 N.Y.S.2d 659; see also Jaramillo v. Weyerhaeuser Co. ("Jaramillo II"), 570 F.3d 487, 489 (2d Cir. 2009) (recognizing the distinction under New York law between "regular" sellers, who sell a given product in the ordinary course of their business, and "casual" or "occasional" sellers, whose sale of a product is wholly incidental to the seller's regular business); Sprung v. MTR Ravensburg Inc., 99 N.Y.2d 468, 472-73, 760 N.Y.S.2d 79, 788 N.E.2d 620 (N.Y. 2003); N.Y. U.C.C. § 2-314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.") Thus, under New York law, "[a] party injured as a result of a defective product may seek relief against the product manufacturer or others in the distribution chain if the defect was a substantial factor in causing the injury." Speller ex rel. Miller v. Sears, Roebuck & Co., 100 N.Y.2d 38, 41, 760 N.Y.S.2d 79, 790 N.E.2d 252 (N.Y. 2003); see also McCarthy v. Olin Corp., 119 F.3d 148, 154 (2d Cir. 1997) ("A manufacturer who places into the stream of commerce a defective product which causes injury may be held strictly liable."); Gebo v. Black Clawson Co., 92 N.Y.2d 387, 392, 681 N.Y.S.2d 221, 703 N.E.2d 1234 (N.Y. 1998) (holding that strict liability may be imposed upon a manufacturer of a defective product which causes injury, as well as upon a seller, dealer or distributor who sold the product in its normal course of business); Assam v. Deer Park Spring Water, Inc., 163 F.R.D. 400, 405 (E.D.N.Y. 1995) ("New York law imposes strict liability for defective products upon manufacturers and those who place the product in the stream of commerce."); Bickram v. Case I.H., 712 F. Supp. 18, 22 (E.D.N.Y. 1989) ("The law of New York imposes strict liability for defective products only upon manufacturers and those involved in placing a product in the stream of commerce.")

As a general rule, "one of the necessary elements plaintiffs in a strict products liability cause of action must establish by competent proof is that it was the defendant who manufactured [or] placed in the stream of commerce the injury-causing defective product." Healey v. Firestone Tire & Rubber Co., 87 N.Y.2d 596, 601, 640 N.Y.S.2d 860, 663 N.E.2d 901 (N.Y. 1996); see also Nelson v. Ashland Oil, Inc., 375 Fed. Appx. 74, 75-6 (2d Cir. Apr. 27, 2010) (holding that the defendants were entitled to summary judgment because the plaintiff had presented no evidence demonstrating that the defendants produced the injury-causing product); Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 504, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (N.Y. 1989) ("In a products liability action, identification of the exact defendant whose product injured the plaintiff is, of course, generally required."). "[L]iability may not be imposed for breach of warranty or strict products liability upon a party that is outside the manufacturing, selling or distribution chain." Joseph v. Yenkin Majestic Paint Corp., 261 A.D.2d 512, 512, 690 N.Y.S.2d 611 (2d Dept. 1999); see Quinones v. Federated Department Stores, Inc., 92 A.D.3d 931, 931-32, 939 N.Y.S.2d 134 (2d Dept. 2012); Laurin Maritime AB v. Imperial Chemical Industries PLC, 301 A.D.2d 367, 367-68, 752 N.Y.S.2d 855 (1st Dept. 2003); also Savage v. Anderson's Frozen Custard, Inc., — N.Y.S.2d—, 2012 WL 5696101, at * 2 (4th Dept. Nov. 16, 2012) (holding that the trial court should have granted the defendant's motion for summary judgment with respect to the plaintiff's claim for breach of implied warranty because the defendant established that it was outside the manufacturing, selling or distribution chain); Ito v. Marvin Windows of New York, Inc., 54 A.D.3d 1002, 1003, 865 N.Y.S.2d 119 (2d Dept. 2008) ("Liability may not be imposed for breach of warranty upon a party that is outside the manufacturing, selling or distribution chain.") Although "the identity of the manufacturer [or supplier or distributor] of a defective

product may be established by circumstantial evidence * * * [such] circumstantial evidence * * * must establish that it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product." Healey, 87 N.Y.2d at 602, 640 N.Y.S.2d 860; see also In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation 739 F. Supp. 2d 576, 597 (S.D.N.Y. 2010); Longo v. Imperial Toy Corp., 306 F. Supp. 2d 199, 202-03 (N.D.N.Y. 2004); Ebenezer Baptist Church v. Little Giant Manufacturing Co., Inc., 28 A.D.3d 1173, 1174, 814 N.Y.S.2d 471 (4th Dept. 2006); Sullivan v. Hutchinson, 12 A.D.3d 740, 741, 783 N.Y.S.2d 715 (3d Dept. 2004); Brown v. Elm Plumbing Supply, Ltd., 271 A.D.2d 469, 469, 706 N.Y.S.2d 909 (2d Dept. 2000). "Speculative or conjectural evidence of the manufacturer's [or supplier's or distributor's] identity is not enough." Healey, 87 N.Y.2d at 602, 640 N.Y.S.2d 860; see also In re MTBE Products Liability Litigation, 739 F. Supp. 2d at 597; Longo, 306 F.Supp.2d at 203; Sullivan, 12 A.D.3d at 741, 783 N.Y.S.2d 715.

Pentair and International Tool have both established their prima facie entitlement to judgment as a matter of law dismissing plaintiffs' first through third claims against them by pointing to an absence of evidence to support an essential element of plaintiffs' claim, i.e., that either defendant manufactured or placed in the stream of commerce the subject Delta Unisaw, and by affirmatively demonstrating that they played no role in the manufacturing, selling or distribution of the subject Delta Unisaw. See, e.g. Quinones, 92 A.D.3d at 932, 939 N.Y.S.2d 134 (affirming summary judgment dismissing the plaintiff's breach of warranty and strict products liability claims against a defendant who was outside the manufacturing, selling or distribution chain); Bova v. Caterpillar, Inc., 305 A.D.2d 624, 626, 761 N.Y.S.2d 85 (2d Dept. 2003) (affirming dismissal of the complaint as against a defendant where the plaintiffs failed to

proffer evidence that the defendant took any part in the manufacture, sale or distribution of the product); Starobin v. Niagara Machine & Tool Works Corp., 172 A.D.2d 64, 65-66, 577 N.Y.S.2d 327 (3d Dept. 1991) (affirming summary judgment dismissing strict products liability claim against finance lessor which neither marketed the allegedly defective product nor placed the product in the stream of commerce). Although International Tool is a seller and distributor of industrial power tools, it does not manufacture or service those products and has no records indicating that it ever sold any tools, including a Delta Unisaw, to All Island or its principals prior to Arneauld's accident. All Island also does not have any records regarding the purchase of its Delta Unisaws and Spinaris could not recall ever doing business with International Tool, or with any other Florida corporation. Thus, the record is bereft of any evidence from which it may reasonably be inferred that International Tool played a role in placing the subject Delta Unisaw into the stream of commerce, or otherwise had a duty to warn of the latent dangers of the Delta Unisaw.

Moreover, since there is no evidence from which it may reasonably be inferred that International Tool played a role in placing the subject Delta Unisaw into the stream of commerce, its purported failure to provide anti-kickback devices does not present a genuine issue of material fact sufficient to preclude summary judgment in favor of International Tool. See, e.g. Chandok, 632 F.3d at 812 ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.")

With respect to Pentair, the photographs of the subject Delta Unisaw corroborate Pentair's contention that the subject Delta Unisaw was manufactured by DIMC, which is not

39

named as a party to this action. In addition, Pentair is a holding company that does not manufacture or distribute products in New York and did not design, manufacture or sell Delta Unisaws. Moreover, Spinaris testified that he did could not recall ever doing business with Pentair.

In opposition to defendants' motions for summary judgment, plaintiffs have failed to proffer any evidence showing a reasonable probability that either defendant manufactured, sold or distributed the subject Delta Unisaw. Indeed, in their Rule 26 disclosure, plaintiffs denied knowing when All Island had purchased its Delta Unisaws, from whom they were purchased, the condition of the Delta Unisaws when they were purchased and whether any warranties were made with respect to All Island's Delta Unisaws, and plaintiffs have not provided that information to date. Since plaintiffs have failed to raise a triable issue of fact with respect to the identity of either defendant as the manufacturer, seller or distributor of the allegedly defective Delta Unisaw, the branches of defendants' motions seeking summary judgment dismissing plaintiffs' negligence, strict products liability and breach of warranty claims are granted and those claims (first through third causes of action) are dismissed in their entirety with prejudice.


C.     Derivative Claim

The dismissal of all of Arneauld's substantive claims is fatal to his wife's derivative claim for loss of consortium. Clarke v. City of New York, 82 A.D.3d 1143, 1144, 920 N.Y.S.2d 913 (2d Dept. 2011); Kaisman v. Hernandez, 61 A.D.3d 565, 566, 878 N.Y.S.2d 305 (1st Dept. 2009); see also Sash v. Rosahn, 450 Fed. Appx. 42, 44 (2d Cir. Dec. 8, 2011) (summary order). Accordingly, the branches of defendants' motions seeking dismissal of Arneauld's wife's

derivative claim for loss of consortium are granted and that claim (fourth cause of action) is dismissed with prejudice.

III.    Conclusion

For the reasons stated herein, defendants' motions seeking summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure are granted and the complaint is dismissed in its entirety with prejudice. The Clerk of the Court shall enter judgment in favor of defendants and close this case.


SO ORDERED.

s/ Sandra J. Feuerstein
_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: November 26, 2012
       Central Islip, N.Y.